# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **EXODUS BENTLEY,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv00002 |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## *I. Background and Standard of Review*

Plaintiff, Exodus Bentley, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bentley filed his application for DIB on April 8, 2004, alleging disability as of October 12, 2003, based on a lower back injury, left shoulder pain, pain in both knees and hips and memory problems. (Record, ("R."), at 44-46, 57, 94.) The claim was denied initially and upon reconsideration. (R. at 23-26, 27, 28-30.) Bentley then requested a hearing before an administrative law judge, ("ALJ"). (R. at 31.) The ALJ held a hearing on April 12, 2006, at which Bentley was represented by counsel. (R. at 173-209.)

By decision dated June 29, 2006, the ALJ denied Bentley's claim. (R. at 14-18.) The ALJ found that Bentley met the disability insured status requirements of the Act for DIB purposes through the date of his decision. (R. at 16.) The ALJ found that Bentley had not engaged in substantial gainful activity at any time relevant to his decision. (R. at 16.) The ALJ also found that the medical evidence established that Bentley suffered from severe impairments, namely degenerative disc disease and right elbow tendonitis, but he found that Bentley did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ found that Bentley retained the

-2-

residual functional capacity to perform light work,[1] which required only occasional stooping and crouching. (R. at 16.) The ALJ found that Bentley was able to perform his past relevant work as a folder operator as generally performed. (R. at 18.) Thus, the ALJ found that Bentley was not disabled under the Act and was not eligible for benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(f) (2007).

After the ALJ issued his decision, Bentley pursued his administrative appeals, (R. at 11), but the Appeals Council denied his request for review. (R. at 5-8.) Bentley then filed this action seeking review of the ALJ's unfavorable decision, which now stands at the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2007). This case is before the court on the Commissioner's motion for summary judgment filed September 10, 2007.

## *II. Facts*

Bentley was born in 1942, (R. at 44, 176), which classifies him as a "person of advanced age" under 20 C.F.R. § 404.1563(e). Bentley has a sixth-grade education and past work experience as a folder operator, a semi-trailer technician and a welder. (R. at 58, 62, 64, 177.) Bentley testified that he was unable to work due to problems with his back, left shoulder and left hip. (R. at 190, 193-94.) He stated that he could walk up to one mile without interruption. (R. at 201.) He stated that he could stand for up to 30 minutes without interruption. (R. at 201.) Bentley stated that he could sit for up to one hour without interruption. (R. at 201.) He stated that he could lift

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2007).

-3-

items weighing up to 30 pounds.  (R. at 202.)

Ann H. Young, a vocational expert, also was present and testified at Bentley's hearing. (R. at 205-08.) Young was asked to consider a hypothetical individual of Bentley's age, education, background training and experiences, who had the residual functional capacity to occasionally lift items weighing up to 50 pounds and frequently lift items weighing up to 25 pounds and who could occasionally stoop or crouch. (R. at 206.) Young testified that such an individual could perform Bentley's prior jobs as a tack welder and folding operator as it is generally performed. (R. at 206.) When asked if the individual would be limited to the use of his hands due to shaking and tremors, Young stated that there would be few jobs available that such an individual could perform and that the jobs of tack welder and folding operator would be eliminated.  (R. at 207-08.) Young testified that, while Bentley described his folder operator job as requiring up to heavy exertion,[2] it requires only light exertion as customarily performed.  (R. at 205.)

In rendering his decision, the ALJ reviewed medical records from James P. Rhodes, D.C., a chiropractor; Dr. Jim C. Martin, M.D.; Dr. Jean Bernard, M.D.; Hillcrest Medical Group; Diagnostic Imaging Associates; Concentra Medical Center; Oklahoma Employment Security Commission; Dr. Andrew C. John, M.D.; Dr. David A. Traub, M.D.; Dr. John W. Hallford, D.O.; and Saint Francis Health System.

On October 19, 2003, the Oklahoma Employment Security Commission

---

[2]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can do heavy work, he also can perform medium, light and sedentary work. *See* 20 C.F.R. § 404.1567(d) (2007).

-4-

indicated that Bentley was discharged from Worldwide Printing and Distributing due to a lack of work.  (R. at 139.)

On November 11, 2003, Bentley was seen at Concentra Medical Center.  (R. at 137-38.) Bentley had limited range of motion of his lumbar spine and neck.  (R. at 137.) It was recommended that Bentley see an orthopedic physician.  (R. at 138.)

On January 27, 2004, Dr. Jim C. Martin, M.D., examined Bentley at the request of Bentley's attorney. (R. at 113-16.) Bentley complained of neck pain with numbness and tingling radiating into his left shoulder blade area.  (R. at 113.) He complained of increased pain in his left shoulder with any use of his left upper extremity and weakness of his left hand.  (R. at 113.) Bentley also complained of low back pain with numbness and tingling radiating into his left hip and leg.  (R. at 113.) Examination of Bentley's neck showed marked spasm and tenderness over the posterior cervical muscles bilaterally.  (R. at 114.) Bentley had limited range of motion of the cervical spine. (R. at 114.) Bentley had tenderness over the left suprascapular nerve with spasm, as well as tenderness over the left trapezius and rhomboid muscles.  (R. at 114.) Dr. Martin reported that Bentley had tenderness over the anterior bursa of the left shoulder and a limited range of motion. (R. at 114.) Bentley had a positive Tinel's sign over the radial nerve of the left hand and he had weakness upon grasping with his left hand. (R. at 114.) Dr. Martin diagnosed severe musculoligamentous injury to the posterior neck and cervical nerve root injury affecting the left shoulder blade area and left upper extremity, possible internal derangement versus impingement syndrome and bursitis affecting the left shoulder and severe musculoligamentous injury to the mid and low back with sensory nerve injury and radiculopathy affecting the left hip and

left lower extremity.  (R. at 115.)

On February 12, 2004, and February 27, 2004, Dr. Martin indicated that Bentley was 100 percent temporarily totally disabled and that he would be for an indefinite period of time, pending further treatment and evaluation.  (R. at 111-12.) On March 1, 2004, Dr. Martin indicated that Bentley was able to use a crossbow for hunting purposes.  (R. at 110.) While it appears that Dr. Martin saw Bentley again in February, the notes of these visits are not included in the record.

On April 21, 2004, Dr. Andrew C. John, M.D., evaluated Bentley.  (R. at 143-50.) Dr. John diagnosed probable osteoarthritis of both knees.  (R. at 147.) Dr. John reported that Bentley was not in need of any continuing or future medical, surgical, chiropractic, orthopedic, neurosurgical or hand surgical care.  (R. at 149.) He reported that Bentley had no period of temporary disability and that he could work at full duty with no limitations.  (R. at 149.)

On July 19, 2004, Dr. Jean Bernard, M.D., examined Bentley for his complaints of back pain.  (R. at 117-23.) Bentley had limited range of motion of the left shoulder. (R. at 118.) Range of motion of Bentley's thoracal lumbosacral spine and upper and lower extremities were within functional limits. (R. at 118, 123.) Dr. Bernard reported that Bentley had a good hand grasp. (R. at 118, 122.) Bentley had normal muscle strength in all muscles.  (R. at 119, 123.) No motor deficits were noted.  (R. at 119.) Dr. Bernard diagnosed pain secondary to a fall and lifting of heavy objects, osteoarthritis affecting mainly both knees and the left shoulder, migraine headaches, decreased range of motion of the left shoulder and depression.  (R. at 119.)

-6-

On September 3, 2004, Dr. John W. Hallford, D.O., performed an independent medical examination. (R. at 155-57.) Dr. Hallford reported that Bentley's examination was objectively normal. (R. at 156-57.) Dr. Hallford reported that Bentley did not need any active medical treatment, and no additional diagnostic, therapeutic or rehabilitative efforts were considered necessary. (R. at 157.)

On September 27, 2004, x-rays of Bentley's shoulders, performed at Diagnostic Imaging Associates, were unremarkable. (R. at 125.) An x-ray of Bentley's right elbow showed calcific tendinitis and olecranon spur, and an x-ray of Bentley's lumbar spine showed severe degenerative changes. (R. at 125.)

On October 5, 2004, a state agency physician[3] indicated that Bentley had the residual functional capacity to perform medium work.[4] (R. at 128-35.) It was indicated that Bentley could frequently climb, balance, kneel and crawl and occasionally stoop and crouch. (R. at 131.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 131-33.) This assessment was affirmed by a second state agency physician on March 28, 2005. (R. at 135.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62

---

[3]The name of the state agency physician is illegible. (R. at 135.)

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2007).

-7-

(1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2007).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall v. Harris*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 29, 2006, the ALJ denied Bentley's claim. (R. at 14-18.) The ALJ found that the medical evidence established that Bentley suffered from severe impairments, namely degenerative disc disease and right elbow tendonitis, but he found that Bentley did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ found that Bentley retained the residual functional capacity to perform light work, which required only occasional stooping and crouching. (R. at

-8-

16.) The ALJ found that Bentley was able to perform his past relevant work as a folder operator as generally performed. (R. at 18.) Thus, the ALJ found that Bentley was not disabled under the Act and was not eligible for benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(f) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Case 1:07-cv-00002-PMS   Document 14   Filed 10/05/07   Page 9 of 11   Pageid#: 258

Bentley argues that the ALJ erred by improperly determining his residual functional capacity. (Brief In Support Of Plaintiff's Motion For Summary Judgment,[5] ("Plaintiff's Brief") at 9-10.) Bentley also argues that the ALJ erred by not finding him disabled based upon the Vocational-Medical Guidelines, ("the Grids"), found at 20 C.F.R. Part 404, Subpart P, Appendix 2. (Plaintiff's Brief at 9-10.)

The ALJ found that Bentley retained the residual functional capacity to perform light work, which required only occasional stooping and crouching. (R. at 16.) Bentley's three physical examinations in April 2004, July 2004 and September 2004 were objectively normal. (R. at 117-23, 143-50, 155-57.) Bentley was found to have had no period of temporary disability. (R. at 149, 156.) None of Bentley's treating physicians placed any functional limitations on Bentley's activities that would preclude light work activity. The ALJ considered Bentley's daily living activities and the fact that he was not required to take prescription pain medication in determining Bentley's residual functional capacity. (R. at 18.) The ALJ found that Bentley could perform his past relevant work as a folder operator as it is generally performed in the national economy. The Dictionary of Occupational Titles, ("DOT"), defines a folding-machine operator as light work. *See* II DICTIONARY OF OCCUPATIONAL TITLES Folding-Machine Operator, Occupational Code 653.382-010 at 601 (4th ed. rev. 1991). Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Bentley's residual functional capacity.

Bentley argues that the ALJ erred by not finding him disabled based upon the

---

[5]Bentley did not file a motion for summary judgment in this matter.

Grids. (Plaintiff's Brief at 9-10.) Based on my review of the record, I disagree. Under the regulations, the Grids apply only if an ALJ finds that a claimant cannot perform his past relevant work. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (2007). Here, the ALJ found that, given his residual functional capacity, Bentley could perform his past relevant work. As already discussed, substantial evidence supports the ALJ's residual functional capacity finding. That being the case, I find that the ALJ did not err by failing to find that Bentley was disabled under the Grids because they simply do not apply to this case.

For all of these reasons, I find that substantial evidence exists to support the ALJ's finding with regard to Bentley's residual functional capacity.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED:      This 5th day of October 2007.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE